Case number 19-2453, Marylynn Genaw v. Garage Equipment Supply. Argument not to exceed 15 minutes per side. Mr. Ali Chararo, you may proceed for the appellant. Thank you. May it please this honorable court, Ali Chararo, for the appellant, the estate of Harold Genaw, by the personal representative Marilyn Genaw. Your honor, this case is about whether factual allegations of the plaintiff's complaint gave sufficient rise to a plausible cause of action under the Michigan Product Liability Law. In the complaint at issue, which is plaintiff's first amended complaint filed in August of 2018, plaintiff alleges on page ID 45, ECF number 11, that decedent Harold Genaw purchased a portable light-duty four-post vehicle lift that was manufactured and designed by the defendant on October 2, 2016. The complaint alleges that the product was being used reasonably and for its intended purpose, which is only two things you do with this lift. One, you drive a car onto the lift. Two, you press a button to lift the car up so you can park another car under it or work under it. The complaint does allege factually that the decedent was guiding his son, Justin, while his son, Justin, was driving the family vehicle onto the lift. The complaint goes on to allege that while Justin, the son of the decedent, was driving the car onto the lift, the lift suddenly, without warning, violently jerked across the garage floor and struck plaintiff's decedent on his head and on his back, causing him to hit the ground with tremendous force, again hitting his head, causing traumatic injuries, including broken vertebrae, broken collarbone, several contusions throughout his body, ultimately leading to his death about eight weeks later. Now, the central issue, really the sole issue as to the sufficiency of this complaint is whether those factual allegations give rise not to a probable, but I would contend they do, but to at least a plausible showing that the it's about notice here, fair notice that the defendant knew what the plaintiff was claiming against them and what they were going to have to defend against. The plaintiffs make absolutely clear the type of lift they purchased, the way they were using it, and that the way they were using it was the proper, foreseeable, intended use of the subject lift, that while the lift was being loaded with a vehicle that was being driven onto it, it jerked suddenly and violently and struck the decedent and killed him. Does Michigan law require a complaint to state the specific defect in the product in order to proceed? No, Your Honor, and in fact, the plaintiff cited to, or the appellate cited to three seminal Michigan cases dealing with specific defects. Now, at the outset, I'll say that the appellee argues and refers to this as a critical distinction that the cases cited by plaintiff were in the context of directed verdict motions and not the pleading stage. But of course, Your Honor, at the pleading stage, this standard is even lower than at the directed verdict stage. At the pleading stage, the question is whether the plaintiff has put enough facts on paper to at least even be able to move forward with a lawsuit. At the directed verdict stage, the issue is whether the plaintiff has enough evidence to back up their claims that a reasonable jury could find that issue and carry a verdict. So I believe that these cases are very spot on. In fact, they're dealing with a higher standard. So looking at that standard, the Holloway case in Michigan, which was 1978 Michigan Supreme Court, the court's language could not be clearer. When they quote and say, just as a plaintiff injured in an automobile collision need not identify a character or other personality defect with positive tendency to drive negligently, and then some other filler language, but the pertinent language that follows is, neither need a person injured by product failure identify the specific defect. That exact quote from the Holloway case that is so on point that they can't be interpreted in any other reasonable way. But then the plaintiff also cited to the Snyder case, Snyder case versus Bob Tibble Ford in 1972, Michigan Court of Appeals case. In that case, the defense, or I'm sorry, the appellees say that it's readily distinguishable. But even in the appellees, they argue that in that case, the only argument they put on paper, which is I agree with it, that in that case, the plaintiff made about eight complaints of the brakes failing on them. And that demonstrable malfunction, the brakes failing multiple times was enough to carry a verdict on the issue of what a defective product under Michigan law. And Snyder, there was no allegation by the complaint of a specific defect that caused the brakes to fail. And the court didn't require one. In fact, the fact that it that it malfunctioned several times was enough. Now in this situation, in this case, clearly, the first malfunction was quite a dramatic one, quite a tragic one, and killed the plaintiff's decedent. It certainly couldn't happen eight times over like this because the first one killed him. But centrally in Snyder, again, unless the appellee's argument has changed to several malfunctions can be a plausible claim of relief. That's not what they're arguing in their brief. They're arguing specific defects. So Snyder doesn't require either. Lastly, in the Bronson case, which the defendant's purport to be distinguishing, the Bronson case, a woman purchased a slip and it caused acute dermatitis. Now the plaintiff could not identify what chemicals were on the slip that caused acute dermatitis, how they got there, at what point in the manufacturing process. But what the plaintiff did do was provide negative evidence that the other clothes she wore during the relevant time were the same clothes she had worn before. She wasn't using new body wash in the shower. She wasn't using new laundry detergent. So this Michigan Supreme Court in Bronson found that, again, the plaintiff didn't have to say where the chemicals came from, how they got there, when they got there. It was enough that this, to separate any other reasonable, arguable causes of this, to turn it onto the defendants. And here is the same situation here where, again, this is a complaint. These are pleadings that have to be taken as true and reasonable inferences drawn from them. Here, the plaintiff alleges that they're using this lift, how it's supposed to be used, by driving a vehicle onto it to lift it up off the ground. And while they're doing that, it completely jerks across and hits the father with enough force to kill him. Another important line from Michigan case law is from the Snyder case itself, where the court says that a demonstrable malfunction is itself evidence that a product is defective. So when we were arguing this in the district court, one of the issues, our argument was whether this was a demonstrable malfunction. And I'll submit that it's hard to think of a more demonstrable malfunction. This is a car lift. Again, you only do two things. You drive a car onto it, you press a button to lift. And certainly when you're driving a car onto a lift, a lift that weighs thousands of pounds and a car that weighs thousands of pounds rolling on a lift, and that lift jerks, that's a demonstrable malfunction. It's not supposed to jerk across the floor while you're driving a car onto it. So that's significant because the fact that plaintiffs, I'm sorry, the fact that plaintiffs plead facts about the demonstrable malfunction, about the lift sliding across the floor and striking plaintiff's decedent while it was being loaded, that's evidence that under Michigan law, that demonstrable malfunction is evidence itself that the product was defective. And so there is evidence in the complaint that it's defective. But what the appellees here want is for the plaintiff to make a prima facie case, well, I would say more than a prima facie case, because the defendants, the appellees want a specific defect in the pleading stage when Michigan case law on point with product liability law does not require the specific defect to carry a burden, let alone to move forward with a complaint. Now, the appellees do point out it without anything else that the cases cited by plaintiff are about 40 years old. But what the defendant doesn't do, the defendant appellee does not point out that these cases don't that they do say that a plaintiff has to find a specific defect. They don't say that anywhere in any of these cases, nor do the appellees point to any case law from Michigan, where courts of appeals or Supreme Court say that yes, a plaintiff does have to find a specific defect to carry a pleading, let alone carry the burden of a jury verdict. So the important thing here is it's twofold. Number one, you don't even need a specific defect to carry your verdict. But even if this court were to find it through the arguments made by the appellee that a specific verdict would have to be found to carry a verdict, that still doesn't answer the question that we're in the pleading stage. The pleading stage where the whole name of the game is fair notice. Fair notice to these defendants to let them know what happened and what they have to defend against. This is of course, the reason why notice pleading exists. So we don't end up in a situation where a complaint has to be long and winding. It mentioned a million things to avoid a situation where a technicality or semantics will cause a dismissal of the case. What we have here is a tragic case where it's like... If we were to disagree with that theory that you have, that your initial complaint was adequate, the district judge also denied you relief under 59E and denied you leave to amend the complaint. How would you address those rulings of the district court? Thank you, Your Honor. So what the district court judge Cox did was he created a timeline that I don't believe gives the most accurate representation of plaintiff's opportunity from the lower court. It is true that the defendants in the lower court filed their motion in April of 2019. And it was heard in July of 2019, which is about three months. But importantly, at the time that that motion was filed, no meaningful discovery had happened yet in the case. In fact, the first event of meaningful discovery that happened in this case that gave plaintiff... Maybe the defense would disagree about how the deposition, but in my mind gave the plaintiff a lot of arguments, specific things that went wrong here. That deposition happened on July 19th, 2019. By the time that deposition happened, this motion had been briefed by all sides. By the time the transcript came in on that, Rush transcript came in on July 29th, 2019. And by that time, not only had this been briefed, it had been argued already in front of Judge Cox. So the opportunity to amend a complaint... And I disagreed in the lower court that notice pleading in fair constitutional notice requires a plaintiff to amend a complaint every time some discovery shed some new light on the case. But even if that were the standard, it remains that by the time this deposition happened, and I outlined a timeline in my brief about how the appellees refused to turn them over, it gave the plaintiffs a hard time. And I understand that motions to compel can be filed, but in the spirit of cooperation, we try to work it out and we did. But that deposition happened in July. By the time we got a transcript, this motion was already argued. Plaintiff didn't have any new evidence in the record yet until a couple of few days before the judge actually entered the order dismissing plaintiff's case where he said he would have granted the amendment... May I finish my sentence? I'm sorry. Yes, please. Where the judge said he would have granted the amendment if it had been filed timely. And of course, it's favored to be decided on the merits. Thank you. Thank you. Mr. Tonberg. Good morning and may it please the court. Eric Tonberg for the Garage Equipment Supply. Your honors, in reviewing this appeal, I think it's helpful to look at the two rulings in the context of pre-judgment versus post-judgment, which I think is certainly a critical distinction here and underscores why affirmance is warranted. So again, pre-judgment, we have the motion for judgment on the pleadings. We maintain that the plaintiff had sufficient facts to survive that stage and that she failed to move to amend in a timely fashion despite having ample opportunity. Then the judgment entered and the plaintiff could no longer avail herself of the protections of Rule 15, namely freely given amendments, without first reopening the case under Rule 59 or 60. And those rules obviously require something more. They require compelling or even extraordinary reason, and that reason is simply not present here. So if Ms. Genahl were permitted a second bite at the apple now, it would mean that plaintiffs could use the court as a sounding board to reference one of the cases in our brief. Plaintiffs could use the court as a sounding board to discover holes in their case and then reopen it after a judgment enters without any consequence. So isn't there a concern here if the district judge said that if a motion to amend had been filed timely, he would have granted it. And then the motion he is denying the 59E slash 15 motion. And we have a case, Morse versus McWhorter, which says basically that you're applying the same standard at the 59E stage as you would under the Rule 15 test. Why wouldn't we at least allow an opportunity or why shouldn't the district judge have allowed an opportunity to amend via the 59E motion? Well, I think, Your Honor, that would probably go to the manifest injustice prong of the 59E argument. And the district court cited a case that held that where a plaintiff could have avoided something easily through a proper understanding of the rules, manifest injustice has not occurred. Which case is this? That case, give me one moment. But you're referring to actually the Bunn case, Your Honor. Again, I'm sorry. That's Bunn versus Navistar, 797F Appendix 247. That's a Sixth Circuit case from 2020 that's cited on page 23 of our response brief. So it's true that the district court took a strict stance on this position, but we believe that the rules are there for a reason. And this wasn't a case where the plaintiff was completely surprised or should have been surprised because there were strong hints during the oral argument that the court felt that the pleading as currently constructed was insufficient. And again, there was plenty of time. If the plaintiff felt that the deposition elicited some sort of evidence that needed to be made, that was something that the plaintiff had in advance of the hearing and had the transcript in advance of the actual ruling. So there was ample opportunity and don't think that interest of fairness be implicated in an undue manner in that way. Well, in the interest of fairness, if the district judge said he would have granted a motion to amend, isn't there manifest injustice in denying leave to amend after the judgment in that the plaintiff has arguably cured the weakness that arguably existed in the initial complaint? And I don't really see where the prejudice would be to your side, given that this 59 motion was filed within the time for filing such a thing. Maybe you can articulate what the prejudice is to your client. Well, I don't know that there's obviously the prejudice of going through the motion preparation stage based on the existing pleading and getting all the way to the hearing. But if the district judge would have granted a motion for leave to amend after the hearing and before decision, what prejudice is there in saying the district judge should have granted such a motion afterwards? Well, I guess, Your Honor, I would just go back to that same point that that would essentially mean that the whole process and the time and expense spent in preparing for the motion was unnecessary. Well, could the district judge then order that your opponent pay the expenses of undertaking that motion? I mean, so that's a financial burden that you definitely had, obviously. But other than that, is there any prejudice? I wouldn't say there's other prejudice other than the prolonging of the case unduly in addition to just the expense. But, Your Honor, on this point, I would like to point out that I think something that the district court may have had in mind was that, you know, the plaintiff portrays this as though that there was some, you know, really magical evidence that was elicited during the deposition or that if he had just rephrased it, it would have been enough to withstand the Rule 12 motion. And that's not the case. And I think that would have been clear to the district court. I mean, as the district court said, it found the plaintiff's portrayal of the deposition testimony to be wholly incredible, I believe was the phrase, because plaintiff claimed that the deposition stood for the proposition that the lift needed to be secured to the ground when, in fact, deposition testimony from my client's 30B6 designee stated the opposite, that securing the lift, anchoring the lift was optional. So, in addition to that, the amended pleading that was submitted by the plaintiff, once she finally got around to moving to amend, was very similar to the Yes, certainly, Your Honor. So, and really, I'm wondering what it adds as well. I mean, it just kind of states the obvious, if you kept it from, if you did something to keep it from moving around, it wouldn't have malfunctioned. Doesn't say too much more than that. But I'm wondering why they have to say much more than that. And that just goes back to the original issue of how much is enough? What were they not, not that you want to make their case for them, but what is lacking when something, let's say, hypothetically, I'm just thinking, what if you buy a clock, and it explodes? Can't you just say, I bought this clock, it was the same condition from when I bought it, nobody lit a fire to it, and it exploded? Do you have to say why it exploded? Which part of the clock struck like a match? Or where? I mean, can't you just say it malfunctioned? Well, Your Honor, you're right that you don't need to have the precision of an expert in your allegations. I'm not asking about whether there's an expert. I'm talking about whether there's a pleading. You don't have to plead. Obviously, there was some reason the clock exploded. Who knows what it was? Maybe when they painted the face, they used the wrong paint. We don't to state a claim. Well, I might credit Your Honor's hypothetical with the clock exploding, but I do think that that's a much more egregious example or extreme example than what we have here. But the lift didn't collapse. It didn't explode. And it didn't pretty unexpected though, right? Did something unexpected and dangerous, is what they've alleged. That is what it looks like a malfunction in ordinary layman's terms anyway. Well, that's true, Your Honor. But I still think that it's not as clear an example as mechanical device. There's several kinds of ways in which it's hard to say why it would do something so strange. Well, there could have been other reasons. I can make up an example that's not so silly, but I was trying to make up a silly one because it seems to be compelling. And then you have to distinguish it. I'm not sure exactly what the distinction is. Well, here in this case, it's true that under Michigan law, a plaintiff isn't required to identify a specific defect, but they must provide more than a mere supposition. That's what one of the cases states to establish that something went wrong consistent with a defect. So here, there were some other explanations that could have happened. I mean, we don't know if the plaintiff's son driving it onto the lift was done properly, just as one example. But I don't want to get into hypotheticals about that because that wasn't really an issue. That wouldn't be something you would have to plead against, write your complaint with it. That would be something that would go to whether a reasonable juror could find. You might be able to do it at summary judgment, but you can't say you have to plead that you haven't shown other causes. Well, I would also contrast this case to one of the other cases that Mr. Trara cited, one of those Michigan cases in Holloway. The plaintiff there alleged that there was a defective ball joint assembly in the suspension of the car that caused an accident. That's the type of allegation that was missing here. Again, it's just not clear that there was something wrong with the actual manufacturing, the actual construction of the lift. And I think the reason is because we've maintained there was. But you're saying in that case, there was more specific evidence. Yes, that's how I read that case. Yes. Well, there's nothing saying they couldn't have alleged more. The question is whether what they did allege was enough. Right. And, you know, those three Michigan cases. To the next stage, which presumably would be summary judgment. Thank you. Thank you. With my remaining time, I mean, it seems like we've zeroed in on the Rule 59 and Rule 60. I just want to add that briefly as to Rule 59, the three theories that that plaintiff asserted was the newly discovered evidence, manifest injustice, which we've been discussing, and clear error of law. As to newly discovered evidence, there was no newly discovered evidence. And I think it's clear that the deposition transcript was not newly discovered just because it was reduced to writing, as the District Court pointed out. There was no clear error of law because the Michigan cases, we distinguished that in our briefs. And Mr. Tarara, you know, noted our argument, essentially, that those cases were involved a different posture. They were the motion for directed verdict during trial, and the courts there performed an in-depth analysis of all the evidence that had been marshaled in the case. And that's just simply, you know, completely different than here at the Rule 12 pleading stage. And then, like I said, it did appear, based on how I read those cases, you know, the published decisions, that they did allege a specific defect. So, we argue that those cases are inopposite to my disposition. And then lastly, before my time is up, Rule 60B, certainly, where relief from judgment under Rule 59E is rare, relief under Rule 60 is even more extraordinary. And here, you know, we just don't think that there's extraordinary circumstances that would warrant such relief. I would also add that, given the equitable principles at play, the District Court's discretion to deny a Rule 60 motion is especially broad. And I would, again, emphasize that the standard here, being abuse of discretion, also applies to Rule 59 and Rule 15. So, for all these reasons, submit that the District Court's opinions were correct and should be affirmed. Thank you. Your mic is not on. We can't hear you. Well, sorry, Your Honor. Thank you for reminding me, Your Honor. Sure. It's a thought that I had in the question I've posited to my brother counsel here today. And if the plaintiff, if the appellee is conceding that the appellant did not have to identify a specific defect, then what more should or could the appellant have said other than that this several thousand pound lift did something so demonstrably malfunctioned in front of the plaintiff that killed the plaintiff and slid across the floor, other than including engineering specific facts or highly technical facts? There's not much more you can say other than what happened exactly in the situation. It was a horrible situation that unfolded in a couple of seconds. And again, using a product that can only be used to do two things, drive a car on and lift it. There's not a whole lot more you can say other than that it's get across the floor. But appellee counsel did concede in his argument today that the plaintiffs don't have to identify a specific defect, but that's not what they argued in the lower court. In fact, in the lower court, when dismissing the case, when Judge Cox himself was framing the issues of the case, he stated that garage equipment argues that Gina has, quote, failed to allege a specific defect attributable to garage equipment supply. That's on page ID 181 in the judge's opinion. And as the appellant has cited in her principal brief, several points during the oral argument where myself, where I tried to make arguments to Judge Cox about the requirement that the Michigan law does not require a finding of a specific defect. And those questions, those statements were shot down every single time in going back to asking me repeatedly whether there was a specific defect alleged in the complaint. And in fact, even in the part of the judge's opinion where he dismissed plaintiff's failure to warrant count, Judge Cox says that plaintiffs should have said what warnings were given, for starters, which I don't know how we could have because there were no warnings given, but then also that the plaintiff should have said what warnings should have been given by the defendants and proof that they would have made a difference in this case. What that means is that Judge Cox, in his opinion, said in so many words that the plaintiffs would have had to make a prima facie case in their complaint. This is a de novo review. Judge Cox did not cite to any Sixth Circuit or Michigan case law for the proposition that on a failure to warrant case that the plaintiff has to say what the warnings, what was there, what wasn't there, what should have been there, and how it would have made a difference. And then in the appellee's brief in this honorable court, the appellee cite only to Judge Cox's opinion, which doesn't cite to anything for that standard. What plaintiffs have cited to, what the appellant has cited to in this honorable court is that under Michigan law, you don't even have to have a defective product to have a failure to warrant case. So I would say even after all of this argument, of I'll stop here unless your honor to have any questions. Thank you. Thank you both for your argument and the case will be submitted.